IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

CALVIN TERRY,                                                                                  PLAINTIFF
ADC #116765

v.                                                 4:17CV00625-JTK

EZELL, et al.                                                           DEFENDANTS

**MEMORANDUM AND ORDER**

**I.     Introduction**

Plaintiff Calvin Terry is a state inmate incarcerated at the Grimes Unit of the Arkansas Department of Correction (ADC), who filed this pro se action pursuant to 42 U.S.C. § 1983, alleging excessive force while confined at the Pulaski County Detention Facility (Jail) in August, 2017 (Doc. No. 2). Defendant Holladay was dismissed on October 25, 2017 (Doc. No. 16)

This matter is before the Court on Defendants' Motion for Summary Judgment, Brief in Support, and Statement of Facts (Doc. Nos. 22-24). Plaintiff filed a Response and Statement of Facts (Doc. Nos. 27-28), Defendants filed a Reply (Doc. No. 29), and Plaintiff filed a Supplemental Response (Doc. No. 31).

**II.    Complaint**

Plaintiff alleged that Defendants Ezell, Huett, and Austin assaulted him on August 30, 2017, while escorting him out of his cell. (Doc. No. 2, p. 4). Plaintiff stated while his hands were cuffed and full of legal materials, Defendant Huett sprayed him with capstun and Defendants Austin and Ezell slammed him to the concrete floor. (Id.) He also claimed Austin gouged him in his eye, punched and elbowed him in the face and head, Ezell hyperextended his wrist with handcuffs, and Huett hyperextended his right ankle while placing leg restraints and shackles on

him. (Id.)   Austin escorted Plaintiff to punitive isolation and denied Plaintiff clean clothes and the ability to shower and grieve the incident. (Id.)   In addition to the three officers, Plaintiff also named John Doe employees of the Jail as Defendants, but did not include specific allegations against the Does, and did not identify them for purposes of service.

### III.   Summary Judgment

Pursuant to FED.R.CIV.P. 56(a), summary judgment is appropriate if the record shows that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.   See Dulany v. Carnahan, 132 F.3d 1234, 1237 (8th Cir. 1997).   "The moving party bears the initial burden of identifying 'those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.'" Webb v. Lawrence County, 144 F.3d 1131, 1134 (8th Cir. 1998) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (other citations omitted)).   "Once the moving party has met this burden, the non-moving party cannot simply rest on mere denials or allegations in the pleadings; rather, the non-movant 'must set forth specific facts showing that there is a genuine issue for trial.'" Id. at 1135.   Although the facts are viewed in a light most favorable to the non-moving party, "in order to defeat a motion for summary judgment, the non-movant cannot simply create a factual dispute; rather, there must be a genuine dispute over those facts that could actually affect the outcome of the lawsuit." Id.

#### A.   Defendants' Motion

Defendants ask the Court to dismiss Plaintiff's claims against them in their individual capacities, based on qualified immunity, which protects officials who act in an objectively reasonable manner.   Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).   In support, Defendants provide each of their incident reports which set forth the specifics of the incident at issue as

follows. (Doc. No. 23-1, pp. 17-19) On August 30, 2017, Defendants Ezell and Huett opened Plaintiff's cell to allow his cellmate to finish a break. (Id.) Plaintiff exited the cell against Ezell's orders and refused Ezell's order to return to the cell. (Id.) Following several more refused orders, Ezell warned Plaintiff that he would be sprayed with Oleoresin Capsicum spray (OC spray) if he did not comply, and Plaintiff returned to his cell. (Id., pp. 17-18) As Ezell secured the cell door, however, Plaintiff kicked the door which then struck Ezell on the right wrist. (Id.) Ezell advised Defendant Austin of the situation and Austin arrived to escort Plaintiff to another Unit. (Id., pp. 17-19) When Austin opened the food port on the cell and ordered Plaintiff to place his hands through the port for cuffs, Plaintiff pulled his hands back into the cell before Austin could double lock the cuffs, and caused an abrasion on his right wrist. (Id., p. 17)   Plaintiff also verbally taunted the officers while in his cell. (Id., p. 19)

When Austin ordered Plaintiff to gather his belongings, Plaintiff was argumentative, but gathered his belongings and exited the cell. (Id.) As he exited, he lunged toward Ezell.   Austin grabbed Plaintiff by the back of the shirt to pull him away from Ezell and told Plaintiff to calm down. (Id.)   However, Plaintiff continued to pull away toward Ezell until Huett followed Austin's orders to spray Plaintiff with OC spray to his facial area.   (Id.) Defendants then pulled Plaintiff to the floor and Huett called for assistance. (Id., p. 18)   Plaintiff refused Austin's orders to lay flat on the floor and Austin pushed Plaintiff's arms forward and rolled him on his stomach. (Id., p. 19) Officers then shackled Plaintiff's legs and placed him at a table to be assessed by medical personnel, who assessed and decontaminated him and officers then walked him to the U Unit. (Id.)

According to Turn Key Health Medical Communication Form, medical personnel decontaminated him and cleared him to remain in the unit, noting he refused treatment to an injury on his right wrist. (Doc. No. 23-1, p. 20)   Robin Ballard, a Legal/Administrative Sergeant at the

Jail, stated that Plaintiff was booked into the Jail on March 13, 2017 on charges of drug possession and fleeing, and released to the ADC on June 26, 2017. (Id., p. 2) However, on August 25, 2017, the Court ordered the Jail to take Plaintiff from the ADC to the Jail in order to meet with his attorney. (Id., pp. 2, 15)   Therefore, Plaintiff was booked into the Jail on August 28, 2017 as a penitentiary returnee and was a convicted inmate at the time of the incident at issue. (Id., pp. 2, 5-10)   Defendants also include two letters indicating that a review of the incident and the video by Captain T. Rose of the Jail concluded no violations with the Jail's Standards of Conduct, Policy and Procedures, or Branch Directives. (Id., pp. 21-22)

Based on these records, and the video of the incident at issue in the complaint, Defendants state that the facts show that they applied a reasonable amount of force in a good faith effort to restore discipline, and that Plaintiff cannot show that they acted maliciously and sadistically to cause harm, citing Hudson v. McMillian, 503 U.S. 1, 6-7 (1992). Defendants also state Plaintiff provides no evidence that Austin gouged him in the eye, punch and elbowed him in the face and head, and that his allegations are contradicted by the video of the incident.

Defendants also ask the Court to dismiss Plaintiff's allegations against them in their official capacities, based on his failure to allege and prove an unconstitutional official policy, custom, or practice that resulted in the alleged incident, citing Baker v. Chisum, 501 F.3d 920, 925 (8th Cir. 2007).

B.     **Plaintiff's Responses**

In his Supplemental Response, Plaintiff clarifies that he was able to view the video of the incident, and claims that it shows no threat to the officers, as his hands were full of legal paperwork and he was handcuffed.   Plaintiff states that Austin grabbed him in a headlock and pried his face and eyes back to allow Huett to pray him in the face, without providing Plaintiff an opportunity to

4

defend himself from their actions. He claims Defendants used more than reasonable force to restrain him while he was being cooperative, and that he never acted in an aggressive manner.

### C.  Defendants' Reply

Defendants maintain they used reasonable force, and add that Plaintiff cannot reply on "self-serving allegations, but must substantiate his allegations with sufficient probative evidence that would permit a finding in his favor." Reed v. City of St. Charles, Mo., 561 F.3d 788, 790-91 (8th Cir. 2009). Defendants rely on the video evidence in support of their defense that they used the least amount of force necessary to gain control after Plaintiff resisted and made physically-threatening gestures.

### D.  Analysis

As noted above, qualified immunity protects officials who act in an objectively reasonable manner. It may shield a government official from liability when his or her conduct does not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow, 457 U.S. at 818. Qualified immunity is a question of law, not a question of fact. McClendon v. Story County Sheriff's Office, 403 F.3d 510, 515 (8th Cir. 2005). Thus, issues concerning qualified immunity are appropriately resolved on summary judgment. See Mitchell v. Forsyth, 472 U.S. 511, 526 (1985) (the privilege is "an *immunity from suit* rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial.").

To determine whether defendants are entitled to qualified immunity, the courts generally consider two questions: (1) whether the facts alleged or shown, construed in the light most favorable to the plaintiff, establish a violation of a constitutional or statutory right; and (2) whether that right was so clearly established that a reasonable official would have known that his or her

actions were unlawful.   Pearson v. Callahan, 555 U.S. 223, 232 (2009).[1]   Defendants are entitled to qualified immunity only if no reasonable fact finder could answer both questions in the affirmative. Nelson v. Correctional Medical Services, 583 F.3d 522, 528 (8th Cir. 2009).

. To support an excessive force claim, Plaintiff must allege and prove that force was not applied in a good-faith effort to maintain or restore discipline, but rather, maliciously and sadistically to cause harm.   Wilkins v. Gaddy, 559 U.S. 34, 37 (2010).   Factors to be considered in determining the reasonable use of excessive force include whether there was an objective need for force, the relationship between the need and the amount of force used, the threat reasonably perceived by the officers, efforts the officers used to temper the severity of their response, and the extent of the inmate's injury. Treats v. Morgan, 308 F.3d 868, 872 (8th Cir. 2002).   In Wilkins, the United States Supreme Court held that the absence of serious injury is not irrelevant to an excessive force inquiry, but is a factor which could suggest whether the force could "plausibly have been thought necessary" and might also provide an indication of the amount of force applied. 559 U.S. at 37 (quoting Hudson v. McMillian, 503 U.S. at 7).   While a "limited application of capstun to control a recalcitrant inmate constitutes a 'tempered response by prison officials' when compared to other forms of force, ... not every instance of inmate resistance justifies the use of force." Treats, 308 F.3d at 872 (quoting Jones v. Shields, 207 F.3d 491, 496 (8th Cir. 2000)).

In this particular case, the video of the incident shows that three officers approached Plaintiff's closed cell door and opened the trap to cuff his hands. (Doc. No. 33) This occurred

---

[1]Courts are "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." Nelson, 583 F.3d at 528 (quoting Pearson v. Callahan, 555 U.S. at 236).

—
—

quickly and it was not apparent from the video whether Plaintiff injured his hand during the process. After the cell was opened, one officer entered the cell and escorted Plaintiff, handcuffed and holding papers in his hand, out of the cell.  As he left the cell, Plaintiff appeared to lunge with his head toward an officer standing outside the cell, who the Court assumes is Defendant Ezell.  Although there is no audio to the recording, the Court can discern that Plaintiff also was verbal and animated and continued to talk during the incident. Ezell then tried to restrain Plaintiff as the officer behind Plaintiff attempted to pull Plaintiff away from Ezell. Both tried to restrain Plaintiff up against the wall outside the cell, but Plaintiff resisted and a third officer sprayed Plaintiff as the other two attempted to pull him to the ground.  Once on the ground, Plaintiff continued to resist, and more officers arrived to help with placing additional restraints on his legs. The camera views do not show the Plaintiff's face while on the ground, and the Court did not view any punching or elbowing other than reasonably forceful actions necessary to restrain Plaintiff. At one point in time, at least six officers and four to five medical personnel were in the room with Plaintiff.  Medical personnel came and treated Plaintiff and one person pulled what appeared to be an oxygen tank on wheels.

Based on the video and the officer's (undisputed) reports of the earlier incident when Plaintiff left his cell without permission and refused to return, the Court finds that Defendants acted reasonably under the circumstances.  It is clear to the Court from Plaintiff's posture, apparent verbal tirade, and reports of the prior incident, that Plaintiff resisted Defendants' attempt to escort him from the cell calmly and without incident.  In addition, Plaintiff's actions in resisting Defendants' efforts required more personnel to help restrain him, and none of those persons used force that would be considered malicious and sadistic.   The application of the spray appeared necessary, but did not immediately calm Plaintiff, and Plaintiff provided no proof of

significant injury which would help to show an unreasonable use of force. Therefore, the Court finds as a matter of law that no reasonable fact finder could find that the facts alleged or shown, construed in the light most favorable to Plaintiff, established a violation of a constitutional or statutory right.

Similarly, the Court finds that Plaintiff provides no proof of Defendants' liability in their official capacities. A suit against a county official in his official capacity is the equivalent of a suit against the county itself. Liebe v. Norton, 157 F.3d 574, 578-9 (8th Cir. 1998). In order for a county to be held liable for the unconstitutional acts of its officials, Plaintiff must allege and prove that a written county policy or pattern of widespread unconstitutional conduct was the moving force behind the unconstitutional actions. Jane Doe A v. Special School District of St. Louis County, 901 F.2d 642, 646 (8th Cir. 1990). In this case, Plaintiff has not provided proof of an unconstitutional county policy or prevalent practice which resulted in a violation of his rights.

Finally, the Court finds that the Doe Defendants should be dismissed, due to Plaintiff's lack of sufficient allegations against them, and his failure to identify them in response to the Court's October 2, 2017, and May 29, 2018 Orders (Doc. Nos. 5, 26).

**IV. Conclusion**

IT IS, THEREFORE, ORDERED that Defendants' Motion for Summary Judgment (Doc. No. 22) is GRANTED, and Plaintiff's Complaint is DISMISSED with prejudice.

An appropriate Judgment shall accompany this Memorandum and Order.

IT IS SO RECOMMENDED this 25th day of June, 2018.

JEROME T. KEARNEY
UNITED STATES MAGISTRATE JUDGE